1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JASON SANTIBANEZ,

11              Petitioner,                    No. 2:09-cv-00239-MCE-DAD (HC)

12        vs.

13   JOHN HAVLIN, Warden,                      FINDINGS AND RECOMMENDATIONS

14              Respondent.

15   _____/

16              Petitioner, a state prisoner currently confined at the California State Prison-

17   Solano, is proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. §

18   2254.  Petitioner challenges a prison disciplinary conviction that resulted from a rules violation

19   report issued against him on July 27, 2007, while imprisoned at the California Men's Colony in

20   San Luis Obispo.[1]  Petitioner seeks relief on due process grounds, claiming that (1) there was

21   insufficient evidence to convict him of "possession of escape paraphernalia"; and (2) the hearing

22   officer improperly declined to call petitioner's requested witness.  Upon careful consideration of

23   _____

24        [1] Title 28 U.S.C. § 2241(d) provides that applications for habeas relief may be filed in
     either (1) the district of confinement, or (2) the district of conviction and sentencing.  Because
25   petitioner is confined in this district, jurisdiction and venue in this court are proper.  See Braden
     v. 30th Judicial Circuit Court, 410 U.S. 484, 499 n.15 (1973) (noting "concurrent habeas corpus
26   jurisdiction over the petitioner's claim by a federal district court in the district of confinement").

the record and the applicable law, the undersigned will recommend that petitioner's application

for habeas corpus be granted.

BACKGROUND

I.  Facts

In its denial of petitioner's application for a writ of habeas corpus, the San Luis

Obispo County Superior Court provided the following factual summary:

> At all relevant times, Mr. Santibanez was an inmate at the
> California Men's Colony.  To celebrate a Summer Solstice Pow-
> Wow, certain Native American artifacts were brought into the
> prison.  Included in these artifacts were four checkered bandanas
> and an "Indian type" woven quilt/rug/blanket approximately 36" x
> 24".  These items had been supplied by Mr. Santibanez's mother.
> After the Summer Solstice Pow-Wow had run its course, Mr.
> Santibanez, with the verbal "ok" from an employee of the
> Department of Corrections and Rehabilitation in charge of the
> Summer Solstice Pow-Wow, kept the bandanas and the
> quilt/rug/blanket and stored them in his cell.  When prison staff
> was unable to account for these items and [sic] investigation was
> initiated.  Because Mr. Santibanez's mother had brought these
> items into the prison, Mr. Santibanez was interviewed.  Mr.
> Santibanez admitted that he had the items in his cell.  He was
> subsequently issued a former Rules Violation, dated June 16, 2007,
> for "Possession of Escape Paraphernalia."  On July 27, 2007, Mr.
> Santibanez was found guilty of the charged and was assessed a
> work-time credit loss of 120 days.  He was also counseled at length
> concerning this incident.[2]
>
> Officials at the California Men's Colony charged and convicted
> Mr. Santibanez of "possession of escape paraphernalia" because
> the quilt/rug/blanket was predominantly a particular shade of green
> which closely resembles the green color of the prison staff's
> uniforms.  The hearing officer noted in his written decision that
> "The green patches of the quilt could have easily been removed
> and used to manufacture a garment that would resemble custody
> uniforms . . . the inmate population is keenly aware of the policy
> that inmates shall not possess any items that may resemble any
> color of staff's uniforms.
>
> . . . There is not one scintilla of evidence that Mr. Santibanez
> possessed the quilt with any intention of mimicking staff uniforms.

---

[2]  As a result of his conviction, petitioner also was placed in Administrative Segregation
for approximately 73 days. (Pet. at 22-23, 61.)

1   (Answer, Ex. 3 (hereinafter Sup. Ct. Opinion) at 42[3].)

2          As to the conduct of the disciplinary hearing, petitioner requested that Brenda

3   Ojeda, a prison supervisor, appear as a witness to testify that she told petitioner he could keep "a

4   few items" from the Pow-Wow, such as the four bandanas and prayer blanket.  (Pet. at 22.)  The

5   hearing officer denied petitioner's request because Ms. Ojeda "was no longer employed by the

6   State of California and could not be present for the hearing."  (Answer, Ex. 2 at 35.)  However,

7   the hearing officer agreed to stipulate that "Ms. Ojeda would testify that she told [petitioner], 'It

8   would be OK to keep a few items.'" (Id.)

9   II.    Statutory Basis of Conviction

10         A.  California Administrative Code. tit. 15 § 3323

11         The hearing officer found that the four bandanas and the prayer blanket

12  constituted contraband as defined in California Administrative Code. tit. 15, § 3000 ("anything,

13  which is not permitted, in excess of the maximum quantity permitted, or received or obtained

14  from an unauthorized source").  (Answer, Ex. 2 at 35.)  Possession of non-dangerous contraband

15  is a misdemeanor administrative rule violation, triggering a range of available punishments

16  including counseling and temporary loss of privileges, but not including work-time credit

17  forfeiture.  Id., §§ 3314(a)(3)(A), 3314(e).

18         However, the hearing officer in this case classified petitioner's violation as a

19  Division "C" offense under § 3323(e)(4)[4], based on "evidence that Santibanez did furnish

20  himself with equipment that would aid him in an escape attempt." (Answer, Ex. 2 at 35.)

21  Division "C" offenses trigger a time-credit forfeiture of 90-120 days.  Id., § 3323(e)(3)

22

23         [3] The court refers to exhibits attached to the petition and answer, respectively, by the page
    numbers assigned by CM/ECF.

24

25         [4] Section 3323(e)(4) concerns "attempted extortion by means of threat."  The court
    assumes that the hearing officer intended to convict petitioner of violating section 3323(e)(3)
    ("furnishing equipment for or aiding and abetting an escape or escape attempt") and will refer to

26  that section hereafter.

1   ("[f]urnishing equipment for or aiding and abetting an escape or escape attempt").

2       B. <u>§ 3000</u>

3           On administrative appeal, prison authorities upheld petitioner's disciplinary

4   conviction as "supported by CCR 3000, Definitions, which states in part that progress toward

5   implementing an escape must be made to implement a plan.  This includes, but is not limited to,

6   the following overt acts: acquiring unauthorized clothing . . ."[5]  (Pet. at 37.)  As stated in an

7   administrative decision denying petitioner's appeal:  "The key to the preponderance in this case

8   is the fact that you illicitly furnished yourself with contraband that could be utilized in an escape

9   attempt.  As you can see in CCR § 3000 . . . , progress toward implementing an escape plan

10   includes, <u>but is not limited to acquiring unauthorized clothing</u>."  (<u>Id.</u> at 54 ) (emphasis in

11   original).

12       C. <u>California Administrative Code. tit. 15 § 3006</u>

13           Prison authorities also cited California Administrative Code. tit. 15, § 3006 as a

14   basis for petitioner's conviction.  (Pet. at 37.)  Section 3006(c)(4) prohibits inmates from

15   possessing, among other types of contraband, "any matter which contains or concerns . . . [p]lans

16   to escape or assist in an escape."

17   _____

18       [5] Section 3000 defines "attempted escape" as:

19           an unsuccessful effort to breach a secured perimeter or the use of
20           force against a person to attempt access into an unauthorized area.
        Some progress toward implementing an escape must be made to
21           implement a plan. This includes, but is not limited to the following
        overt acts: <u>acquiring unauthorized clothing</u> or identification,
22           preparing a hiding place in an unauthorized area, lying in wait for a
        potential hostage, attempting access to a perimeter that was
23           unsupervised, unlawfully obtaining tools to aid in an escape,
        manufacturing a likeness of a person in order to substitute for the
24           inmate's presence, or receiving assistance from other conspirators
        who acted upon an escape plan, e.g. a plan to escape uncovered
25           from verbal, telephone or mail communication.

26   (Emphasis added).

4

III.  Procedural History

Petitioner filed habeas petitions challenging his disciplinary conviction in the San Luis Obispo County Superior Court, the California Court of Appeal for the Second Appellate District, and the California Supreme Court.  (Pet. at 2-3, 19-30.)  The California Supreme Court summarily denied the last of those petitions on January 14, 2009.  (Pet. at 11; Answer, Ex. 7.)  Respondent concedes that petitioner has exhausted his state court remedies with respect to the instant claims that (1) the challenged disciplinary proceeding violated his federal due process rights because it lacked evidentiary support; and (2) the denial of his request for a witness violated his federal rights.  (Answer at 2.)  Respondent also concedes that the instant petition is timely.  (Id.)

ANALYSIS

I.  Standards of Review Applicable to Habeas Corpus Claims

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting habeas corpus relief:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the

merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001). If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008). See also Frantz v. Hazey, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). See also Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000) (when reviewing a state court's summary denial of a claim, the court "looks through" the summary disposition to the last reasoned decision.)

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002). When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on

1    procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court

2    must review the claim de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

3    II.    Petitioner's Claims

4            A.  Description of Claims

5                    First, petitioner claims that there was insufficient evidence to convict him of

6    possession of escape paraphernalia.  Rather, he maintains, his offense "amount[ed] to a

7    possession of contraband" and should have been classified a misdemeanor disciplinary offense,

8    which would not have resulted in his losing work-time credits or being placed in Administrative

9    Segregation for over 70 days.  (Pet. at 27.)  "There was no escape or escape attempt, therefore

10   petitioner did not furnish equipment to the [sic] end," petitioner asserts.  (Id. at 23.)  "All

11   references to escape are speculation and conjecture not based on any received information from

12   any subsequent investigation or otherwise."  (Id.)  Moreover, petitioner argues, the hearing

13   officer's finding that petitioner "'did furnish himself with equipment that would aid him in an

14   escape attempt' wholly fails a 'some evidence' standard[.]"  (Id. at 26.)  Petitioner argues that

15   "[t]he [hearing officer's] conjecture that 'the green patches of quilt could have been easily

16   removed' . . . does not turn the prayer blanket into unauthorized clothing."  (Id.)  Because his

17   conviction of possession of escape paraphernalia lacked "one scintilla of evidence" in support,

18   petitioner asserts, it violated his federal due process rights and should be reversed.  (Id. at 27.)

19                   Second, petitioner claims that his federal due process rights were violated when

20   the hearing officer denied his request to have Ms. Ojeda testify in his defense.  (Id. at 27-28.)  He

21   asserts that the requested witness had "necessary" and "significant" information, and that because

22   he was not allowed to adequately defend himself by calling this critical witness, his disciplinary

23   conviction should be dismissed.  (Id.)

24            B.  State Court Opinion

25                   The San Luis Obispo County Superior Court rejected petitioner's insufficiency of

26   the evidence claim, reasoning as follows:

> The gist of the subject petition is that disciplinary staff over-reacted. . . . Mr. Santibanez argues that the charge and conviction are an abuse of discretion.  He requests an order directing prison authorities to vacate his conviction and expunge any reference to this incident from his C-file.
>
> Because of the challenges in managing a prison, courts give substantial deference to the rational, good faith judgment of prison officials to execute policies and practices as needed to maintain institutional security.  In re Wilson (1988) 202 Cal. App. 3d 662, 667.  Prison life, and relations between the inmates themselves and between the inmates and prison officials or staff, contain the ever-present potential for violent confrontation and conflagration.  Responsible prison officials must be permitted to take reasonable steps to forestall such a threat.  Jones v. North Carolina Prisoner's Union (1977) 433 U.S. 119, 132.  Operation of correctional facilities is peculiarly the province of the Legislative and Executive branches of our Government, not the Judicial Branch.  In re: Bradshaw (1980) 104 Cal. App. 3d 475, 483-484.  Courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment.  Such flexibility is especially warranted in the fine-tuning of the ordinary incidents of prison life, a common subject of prisoner complaints.  Sandin v. Conner (1995) 515 U.S. 472.  Prisons must be run by prison officials, not judges.  Toussaint v. McCarthy (9th Cir. 1991) 926 F.2d 800, 801.  Courts should not consider de novo, second-guess or micro manage the business of the Department of Corrections and Rehabilitation.  See In re: William Rhodes (1998) 61 Cal. App. 4th 101, 108.  The issuance of an order to show cause would be inconsistent with the aforementioned and well-established policy of judicial restraint.

(Sup. Ct. Opinion at 1-2.)

The Superior Court summarily rejected petitioner's claim that the absence of Ms. Ojeda as a witness violated his due process rights, stating merely:

> All other challenges to the guilty finding alleged in the subject petition, but not specifically mentioned herein, have been considered and found to be either unsubstantiated or not prejudicial.

(Id. at 2.)

C. Applicable Law

It is well established that while inmates subjected to disciplinary action are entitled to certain procedural protections under the Due Process Clause, they are not entitled to

8

1   the full panoply of rights afforded to criminal defendants.  Wolff v. McDonnell, 418 U.S. 539,

2   556 (1974); see also Superintendent v. Hill, 472 U.S. 445, 455-56 (1985); United States v. Segal,

3   549 F.2d 1293, 1296-99 (9th Cir. 1977) (observing that prison disciplinary proceedings

4   command the least amount of due process along the prosecution continuum).  Thus, a prison

5   inmate is entitled to advance written notice of the charge against him as well as a written

6   statement of the evidence relied upon by prison officials and the reasons for any disciplinary

7   action taken.  See Wolff, 418 U.S. at 563.  In the disciplinary hearing context, an inmate does not

8   have a right to counsel, retained or appointed, although illiterate inmates are entitled to

9   assistance.  Id. at 570.

10        An inmate charged with a disciplinary offense also has a right to a hearing at

11  which he may "call witnesses and present documentary evidence in his defense when permitting

12  him to do so will not be unduly hazardous to institutional safety or correctional goals."  Wolff,

13  418 U.S. at 566.  See also Ponte v. Real, 471 U.S. 491, 495 (1985).  The right to call witnesses is

14  subject to the "mutual accommodation between institutional needs and objectives and the

15  provisions of the Constitution."  Baxter v. Palmigiano, 425 U.S. 308, 321 (1976) (citing Wolff,

16  418 U.S. at 556).  See also Serrano v. Francis, 345 F.3d 1071, 1077 (9th Cir. 2003); Bostic v.

17  Carlson, 884 F.2d 1267, 1271 (9th Cir. 1989). "Prison officials must have the necessary

18  discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may

19  create a risk of reprisal or undermine authority, as well as to limit access to other inmates to

20  collect statements or to compile other documentary evidence."  Wolff, 418 U.S. at 566.  Prison

21  officials may, but are not required to, explain their reasons limiting an inmate's efforts to defend

22  himself.  Ponte, 471 U.S. at 497.  Should prison officials refuse to call a witness, they should

23  explain their reasons in disciplinary proceedings or later in court proceedings.  Id.; see also

24  Bostic, 884 F.2d at 1274 (the burden is on prison officials to provide justifications for the refusal

25  to allow witnesses).  So long as those reasons "are logically related to preventing undue hazards

26  to 'institutional safety or correctional goals,' the explanation should meet the due process

9

1  requirements as outlined in Wolff." Ponte, 471 U.S. at 497.  However, as a general rule,

2  inmates "have no constitutional right to confront and cross-examine adverse witnesses" in prison

3  disciplinary hearings. Id. at 510 (Marshall, J., dissenting).  See also Baxter v. Palmigiano, 425

4  U.S. 308, 322-233 (1976)

5          Prison disciplinary hearing must be conducted by a person or body that is

6  "sufficiently impartial to satisfy the Due Process Clause." Wolff, 418 U.S. at 571.  The decision

7  rendered on a disciplinary charge must be supported by "some evidence" in the record.  Hill, 472

8  U.S. at 455.  A finding of guilt cannot be "without support" or "arbitrary." Id. at 457.  The

9  "some evidence" standard is "minimally stringent," and a decision must be upheld if there is any

10  reliable evidence in the record that could support the conclusion reached by the fact finder.

11  Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Hill, 472 U.S. at 455-56 and Cato v.

12  Rushen, 824 F.2d 703, 705 (9th Cir. 1987)).  See also Barnsworth v. Gunderson, 179 F.3d 771,

13  773 (9th Cir. 1990);  Zimmerlee v. Keeney, 831 F.2d 183, 186 (9th Cir. 1987).  Determining

14  whether this standard is satisfied does not require examination of the entire record, independent

15  assessment of the credibility of witnesses, or the weighing of evidence.  Toussaint v. McCarthy,

16  801 F.2d 1080, 1105 (9th Cir. 1986).  Indeed, in examining the record, a court is not to make its

17  own assessment of the credibility of witnesses or re-weigh the evidence.  Hill, 472 U.S. at 455.

18  The question is whether there is any reliable evidence in the record that could support the

19  decision reached.  Powell, 33 F.3d at 40; Toussaint, 801 F.2d at 1105.

20          Where a protected liberty interest exists, the requirements imposed by the Due

21  Process Clause are "dependent upon the particular situation being examined." Hewitt v. Helms,

22  459 U.S. 460, 472 (1983).  The process due is such procedural protection as may be "necessary to

23  ensure that the decision . . . is neither arbitrary nor erroneous." Washington v. Harper, 494 U.S.

24  210, 228 (1990).  In identifying the safeguards required in the context of disciplinary

25  proceedings, courts must remember "the legitimate institutional needs of assuring the safety of

26  inmates and prisoners" and avoid "burdensome administrative requirements that might be

1   susceptible to manipulation." <u>Hill</u>, 472 U.S. at 454-55.  The requirements of due process in the

2   prison context involve a balancing of inmate rights and institutional security concerns, with a

3   recognition that broad discretion must be accorded to prison officials.  <u>Wolff</u>, 418 U.S. at

4   560-63; <u>see also</u> <u>Baxter</u>, 425 U.S. at 324.

5         D.  <u>Analysis</u>

6               Because the San Luis Obispo Superior Court did not address its reasoning to the

7   particular facts underlying petitioner's first claim for habeas relief and summarily rejected his

8   second claim, this court must independently reviews the record to determine whether habeas

9   relief is available to petitioner under 28 U.S.C. § 2254(d).  <u>Himes</u>, 336 F.3d at 853.  The question

10  is whether the state court's decision denying habeas relief was either contrary to, or an

11  unreasonable application of, clearly established federal law or whether the decision was based on

12  an unreasonable determination of the facts in light of the evidence presented.

13              As to petitioner's claim that the hearing officer lacked sufficient evidence to

14  convict him of "possession of escape paraphernalia," established federal law requires a

15  disciplinary conviction to be supported by "some evidence."  Hill, 472 U.S. at 455.  To the extent

16  that petitioner's work-time credits were revoked as the result of a conviction not supported by

17  "some evidence," his federal due process rights were violated.  Id.  However, the "some

18  evidence" standard is satisfied if "there is any reliable evidence in the record that could support

19  the decision reached."  Toussaint, supra, 801 F.2d at 1105.

20              Prison officials convicted petitioner of violating California Administrative Code

21  tit. 15 § 3323(e)(3), citing "evidence that [petitioner] did furnish himself with equipment that

22  would aid him in an escape attempt," where the equipment was "unauthorized clothing" as

23  described in section 3000.  (See Statutory Basis of Conviction, supra.)  In the administrative

24  appeal process, prison authorities cited another possible statutory basis for petitioner's

25  conviction: § 3006(c)(4), which prohibits inmates from possessing "any matter which . . .

26  concerns . . . [p]lans to escape or assist in an escape."  (Id.)  Thus, the undersigned looks to

1  whether there is "some evidence" that petitioner furnished himself with unauthorized clothing

2  that would aid in an escape attempt or, alternatively, possessed any matter concerning "plans to

3  escape or assist in an escape."

4          Here, there is no evidence that petitioner possessed "unauthorized  clothing" such

5  as could be used in an escape attempt, or had any "plans to escape or assist in an escape."

6  Rather, he possessed a 2' x 3' textile that was mostly green in color.  Prison authorities reasoned

7  that "the green material could have been utilized to manufacture a garment resembling custody

8  staff, hence the charge of 'Possession of Escape Paraphernalia." (Pet. at 37.)  But, as petitioner

9  correctly points out, this is mere conjecture as to what petitioner <u>might</u> have done with the prayer

10 rug at some future date, not anything he had done, nor likely even could do.  Indeed, prison

11 authorities appear to have simply engaged in the assumption that petitioner had the advanced

12 tailoring skills (not to mention cutting and sewing tools) necessary to turn a rug the size of a

13 doormat into something resembling a prison guard's uniform.  By this reasoning, an inmate in

14 possession of a magazine with several green pages could fashion a guard's disguise through

15 stapling or the cunning use of origami.  But such sheer conjecture cannot serve as the basis for a

16 disciplinary conviction.

17         Nor can it meet even the low bar of the "some evidence" standard.  <u>See</u> <u>Cato v.</u>

18 <u>Rushen</u>, 824 F.2d 703, 705 (9th Cir. 1987) (disciplinary conviction for involvement in escape

19 plot was not supported by "some evidence" where based on uncorroborated hearsay statement of

20 confidential informant); <u>see also</u> <u>Goff v. Burton</u>, 91 F.3d 1188, 1192 (8th Cir. 1996) (the "some

21 evidence" standard does not "require that credence be given to that evidence which common

22 sense and experience suggest is incredible.")  Instructive in this regard is the case of <u>Broussard v.</u>

23 <u>Johnson</u>, 252 F.3d 874 (5th Cir. 2001).  There, two inmates were found guilty of possessing

24 contraband intended for use in an escape.  A confidential informant told prison authorities that

25 these two men were planning an escape and had hidden bolt cutters in the kitchen area, where

26 they worked.  252 F.3d at 875.  Prison authorities searched the kitchen and found the bolt cutters,

1  and defendants were convicted on the basis of both this evidence and the informant's tip.  The

2  Fifth Circuit held that, because the informant was not established as reliable, his tip could not be

3  used in support of defendants' conviction.  252 F.3d at 877-878.  Nor could the bolt cutters alone

4  meet the "some evidence" standard, as "the only evidence linking defendant [Broussard] to the

5  bolt cutters is that they were found in an area in which he worked, but to which approximately

6  one hundred inmates had access."  Id. at 877.  Accordingly, the Fifth Circuit affirmed the district

7  court's grant of Broussard's habeas petition challenging his disciplinary conviction.  Id.

8          In Broussard, even though evidence established that some inmate had possessed

9  the bolt cutters in likely furtherance of an escape plan, prison authorities improperly made a

10  conjectural leap that the inmate was defendant Broussard.  Indeed it may have been, but given the

11  other possibilities – roughly ninety-nine other inmates who could have hidden the bolt cutters in

12  the kitchen – prison officials were found to have lacked "some evidence" that Broussard was the

13  guilty party.  Similarly, in the instant case, the hearing officer made a giant conjectural leap that

14  petitioner would or could use the green material in the prayer rug to make "unauthorized

15  clothing" that "could" in turn be mistaken for a guard's uniform in some theoretical future escape

16  attempt.  The other possibility based upon the evidence is, of course, that petitioner had no

17  intention of using the prayer rug in any escape-related plan, and – in any event – would not have

18  been capable of turning such a small piece of fabric into "clothing" of any kind.   Because, as the

19  San Luis Obispo County Superior Court noted, "[t]here is not one scintilla of evidence that Mr.

20  Santibanez possessed the quilt with any intention of mimicking staff uniforms[,]" the latter

21  interpretation of the evidence seems far more plausible.  In any event, the conjectural leap

22  necessary to convict petitioner of "possession of escape paraphernalia" constitutes a due process

23  /////

24  /////

25  /////

26  /////

1    violation under the holdings in <u>Broussard</u> and <u>Cato</u>.[6]

2            In light of this, the undersigned finds that the San Luis Obispo County Superior

3    Court unreasonably applied the "some evidence" standard to the facts of petitioner's

4    insufficiency of the evidence claim.  Indeed, that court did not apply the "some evidence"

5    standard at all, but merely based its denial of habeas relief on general observations regarding

6    courts' customary deference to the judgment of prison officials.  (Sup. Ct. Opinion at 2.)  It

7    concluded that "[t]he issuance of an order to show cause would be inconsistent with the

8    aforementioned and well-established policy of judicial restraint."  (<u>Id</u>.)  This conclusory finding,

9    construed to have been adopted by the California Supreme Court under the look-through rule,

10   does not vindicate petitioner's federal due process rights under AEDPA.  <u>See</u> 28 U.S.C. §

11   2254(d)(1).

12           As to petitioner's second claim that the absence of his requested witness violated

13   due process, the undersigned finds the San Luis Obispo County Superior Court's decision

14   denying relief with respect to this claim to be reasonable.  As respondent observes, the hearing

15   officer's reason for denying petitioner's request that Ms. Ojeda appear as a witness – that she no

16   longer worked at the prison – was reasonably intended to avoid delaying the hearing for an

17   unavailable witness.  See Ponte, 471 U.S. at 497.  Moreover, because the hearing officer

18   stipulated that Ms. Ojeda would testify that she gave petitioner permission to keep a few items

19   from the Pow-Wow, petitioner would have gained little by her testifying as such in person.  (See

20   Answer at 7.)  Thus, the San Luis Obispo County Superior Court's summary denial of this claim

21

22           [6] The undersigned is quite mindful that the "some evidence" standard is "minimally
     stringent," and that a decision must be upheld under that standard if there is any reliable evidence

23   in the record that could support the conclusion reached by the fact finder.  <u>Powell v. Gomez</u>, 33
     F.3d 39, 40 (9th Cir. 1994).  Given that standard, federal habeas relief is rarely available to

24   prisoners mounting collateral challenges to prison disciplinary convictions.   This is, however,
     the rare case.  The San Luis Obispo County Superior Court correctly found that  there was "not

25   one scintilla of evidence that Mr. Santibanez possessed the quilt with any intention of mimicking
     staff uniforms." (Sup. Ct. Opinion at 42.)  Given that accurate characterization of the evidence,
     the decision of prison officials finding petitioner guilty of  possession of escape paraphernalia

26   was entitled to no deference.

1    was not unreasonable under AEDPA and provides no basis for habeas relief.

2                                              CONCLUSION

3              Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

4    a writ of habeas corpus (Doc. No. 1) be granted.

5              These findings and recommendations are submitted to the United States District

6    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

7    one days after being served with these findings and recommendations, any party may file written

8    objections with the court and serve a copy on all parties.  Such a document should be captioned

9    "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

10   shall be served and filed within fourteen days after service of the objections.  The parties are

11   advised that failure to file objections within the specified time may waive the right to appeal the

12   District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

13   DATED: August 2, 2010.

14

15                                              _Dale A. Drozd_____

16                                              DALE A. DROZD
                                                UNITED STATES MAGISTRATE JUDGE
17   DAD3
     santi0239.wpd
18

19

20

21

22

23

24

25

26